IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BENJAMIN LIN, | ) | CIVIL NO. 08-00229 JMS/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| DAVID C.A. LIN; | ) | |
| JOHN DOES 1 - 10; | ) | |
| JANE DOES 1 - 10; DOE | ) | |
| CORPORATIONS 1 - 10; AND | ) | |
| DOE UNINCORPORATED | ) | |
| ASSOCIATIONS, INCLUDING | ) | |
| PARTNERSHIPS 1 - 10; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Father and Mother had three sons -- Ben, David, and Michael Lin.

Ben was the first born, followed by David, and then Michael.  This action results

from a family dispute between the two oldest sons regarding the distribution of

their parents' estate that was administered over fifteen years ago.  Plaintiff Ben

Lin ("Plaintiff") alleges that his brother, Defendant David Lin ("Defendant"),

intentionally prevented him from receiving his one-third share from their parents'

estate[1] and, as a result, intentionally or recklessly caused Plaintiff severe emotional distress.  Plaintiff also requests a constructive trust to prevent Defendant's unjust enrichment.  Currently before the court is Defendant's Motion for Summary Judgment on the basis that Plaintiff's claims are barred by the statute of limitations and the doctrine of laches.  For the following reasons, the court GRANTS Defendant's Motion for Summary Judgment.

## II. <u>BACKGROUND</u>

### A.    Father's Revocable Trust, Father's Will, and Probate of His Estate

On December 7, 1979, Tsui Shain Lin ("Father") executed the Tsui Shain Lin Revocable Trust Agreement ("Father's Revocable Trust") and Last Will and Testament of Tsui Shain Lin ("Father's Will").  Def.'s Exs. D; M.  Father's Will named Defendant as Personal Representative, and Father's Revocable Trust named Defendant as first successor trustee.  Def.'s Exs. M, at 3; D, at 12.  When Father died on February 2, 1980, Defendant became successor trustee of Father's Revocable Trust and Personal Representative responsible for distribution of Father's estate.  Def.'s Statement of Facts ("SOF") ¶¶ 5, 7.

On June 18, 1980, Defendant's attorney mailed a copy of the petition

---

[1]  Plaintiff cites *Firestone v. Galbreath*, 616 N.E. 2d 202, 203 (Ohio 1993), as supporting an intentional interference with inheritance claim.  This Order does not address whether Hawaii would recognize such a claim, and, if so, what its elements would be.

for probate of Father's Will to Mother, Plaintiff, and Michael Lin.  Def.'s Ex. N.

Plaintiff received a copy of the petition for probate of Father's Will, and on July

21, 1980, Plaintiff signed a Waiver of Notice of all pleadings and hearings in the

probate of Father's Will.  Def.'s Ex. O; Pl.'s Nov. 16, 2006 Decl. ¶ 3.  As a result,

Plaintiff did not receive a copy of Father's Will.  *See id.*

On September 12, 1980, Defendant filed an inventory with the First

Circuit Court for the State of Hawaii ("probate court") listing Father's property at

the time of his death.  Def.'s Ex. Q.  The inventory included 12,490 shares of T. S.

Lin & Sons, Inc. ("Family Corporation" or "Family Stock") with an estimated

value of $130,000.00,[2] a Hawaii National Bank Savings Account valued at

$807.51, a Hawaii National Bank Checking Account valued at $1,296.76, and an

account receivable from the Family Corporation valued at $28,258.67.[3]  *Id.*

On April 3, 1984, Defendant filed the Petition for Approval of Final

Accounts and Distribution and Complete Settlement of Father's Estate in probate

---

[2]  Defendant claims Father owned 12,490 shares of Family Stock, Def.'s Decl. ¶ 12; Def.'s Exs. Q, at 2; R, at 2, but Plaintiff believes there may be an additional 12,510 shares of Family Stock that were unaccounted for in the probate of Father's estate.  *See* Pl.'s Aug. 21, 2008 Decl. ¶ 11 ("To me, a combination of Exhibits Q and R establishes that there are another 12,510 shares unaccounted for in the [Family] Corporation.").

[3]  The parties further dispute whether Father or the Family Corporation owned a Honolulu condominium at the time of Father's death.  *See* Def.'s Exs. Q; S; Pl.'s Nov. 16, 2006 Decl. ¶ 14.

court.  Def.'s Ex. S.  A probate hearing was held on May 18, 1984, and on May 23,

1984, the probate court entered the Order Approving Final Accounts and

Distributing and Settling Estate for Father's Estate ("Order Approving Father's

Estate").  Def.'s Ex. U.  The probate court found that "[n]otice of time and place of

hearing the petition was given to all interested persons as provided by law" and

ordered Defendant to distribute the estate's property to himself in trust as

successor trustee under Father's Revocable Trust.  *Id.* at 2.

According to Defendant, Defendant's attorney sent copies of Father's

Revocable Trust and Will to Plaintiff on September 8, 1987.  Def.'s Ex. C; Ching

Decl. ¶ 4.  Although Plaintiff admits that he received a copy of Father's Revocable

Trust, he claims he never received a copy of Father's Will.  Pl.'s Nov. 16, 2006

Decl. ¶¶ 3, 4.  Along with Father's Revocable Trust, Plaintiff also received a

document entitled "Assignment" that requested Plaintiff to assign all of his interest

in the Family Corporation to Defendant upon termination of the Residuary Trust

within Father's Revocable Trust.  *Id.* ¶ 3.  After receiving the request for

Assignment in September 1987, Plaintiff "believe[d] it was David's intention to

keep all the money in the trust for himself but at that time [he] was unable to

pursue any legal action against [his] brother[,]" and Plaintiff refused to sign the

Assignment.  *Id.* ¶¶ 4, 5.

4

**B.     Mother's Revocable Trust, Mother's Will, and Probate of Her Estate**

On December 7, 1979, the same day Father executed his Revocable Trust, Mother entered into the Yuan Fong Chin Lin Revocable Trust Agreement ("Mother's Revocable Trust").  Def.'s Ex. E.  On August 7, 1987, Mother executed the First Amendment of Revocable Trust ("Mother's First Trust Amendment")[4] and executed her Last Will and Testament ("Mother's Will").  Def.'s Exs. F; W.  On July 6, 1988, Mother executed a Second Amendment to the Declaration of Revocable Trust ("Mother's Second Trust Amendment")[5] and the First Codicil to her Will ("Mother's Codicil").[6]  Def.'s Exs. G; X.

---

[4]  Mother's First Trust Amendment provides that "[a]ll of the shares in stock of T.S. Lin & Sons, Inc., shall be distributed free and clear of trust, to [her] son David, if he shall survive her . . . ."  Def.'s Ex. F, Art. III(1).

[5]  Mother's Second Trust Amendment revokes Article III(1) and substitutes the following:

> "Upon my death, the trust shall terminate and the assets of the trust . . . shall be distributed outright and free from any trust to **DAVID C. A. LIN**, if he shall then be surviving.  In the event that **DAVID C. A. LIN** shall not then be surviving, all of the trust property shall be distributed equally, outright and free from any trust to **MICHAEL S. A. LIN** and **BENJAMIN K. A. LIN**."

Def.'s Ex. G ¶ 2.

[6]  While not entirely clear, it appears that Plaintiff disputes whether Mother was competent to enter into her Will, Codicil, and her First and Second Trust Amendments.  Pl.'s Aug. 21, 2008 Decl. ¶ 3 ("I do not see any evidence in the Defendant's documentation submitted with his motion for summary judgment proving that our mother was competent to do anything with the corporate stock . . . ."); *see also id.* ¶ 27 ("I know that while [my Mother] was living in Taiwan that she was not physically and mentally well, such that she would know what to do with

(continued...)

5

Defendant asserts that on May 10, 1988, Father's Trust distributed all 12,490 shares of the Family Stock to Mother (6,245 from the Marital Trust and 6,245 from the Residuary Trust).  Def.'s Decl. ¶ 15; Def.'s Ex. H; *see also* Pl.'s Ex. 2, at 19-22 (copies of stock certificates).  Plaintiff, however, questions whether Mother ever received the stock certificates: "I do not know what, if anything, our mother did with the corporate stock in T.S. Lin & Sons, Inc. or even if she had such stock certificates issued in her name because I do not trust my brother at all at this point."  Pl.'s Aug. 21, 2008 Decl. ¶ 5; *see also id.* ¶ 32.[7]

Mother died on November 23, 1990, and all three sons attended the funeral in Taiwan.  Def.'s SOF ¶ 18.  Mother's estate was administered in probate court, and the Chief Clerk of Court of the probate court ("Chief Clerk") served as Personal Representative.  Def.'s Ex. Y.  Mother's Will and Codicil were filed in probate court on October 17, 1991.  *Id.*; Wong Decl. ¶¶ 16, 17.  On that day, the Chief Clerk filed a Notice of Administration providing notice to all heirs and distributees to attend a January 17, 1992 hearing or to file their claims within sixty days of the notice.  Def.'s Ex. Z.  Additionally, on October 24, 1991, notice of the

---

[6](...continued)
any stock certificates in the family Corporation, and that she would probably do whatever my brother David told her to do with regard to business transactions.").

[7]After this distribution, Defendant asserts that Father's Trust had no assets.  Def.'s Decl. ¶ 16.

hearing was published in *The Honolulu Advertiser.*  Def.'s Ex. AA.

On May 8, 1992, an inventory for Mother's probate was filed, Def.'s Ex. BB, and on September 23, 1992, an Order Approving the Amended Final Account, Distribution of Estate and Discharge of Personal Representative for Mother's Estate ("Order Approving Mother's Estate") was filed.  Def.'s Ex. DD.

## C.    Plaintiff's Reasons for Delay

Based upon Mother's assurances and Chinese tradition, Plaintiff expected an inheritance from his parents.  Pl.'s Aug. 21, 2008 Decl. ¶¶ 25, 35, 36. Plaintiff cites the following reasons for his delay in filing an action to recover his inheritance from his parents' estate: Plaintiff lacked sufficient funds to hire an attorney, *id.* ¶ 30; Pl.'s Nov. 16, 2006 Decl. ¶¶ 6, 8; Defendant never told Plaintiff the trust was totally exhausted, Pl.'s Nov. 16, 2006 Decl. ¶¶ 14, 16;[8] Plaintiff feared Defendant because he was a "physically and mentally violent person[,]" *id.* ¶ 7; and Plaintiff believed that the stress of litigation would have been detrimental to his health.  *Id.* ¶ 6.  Further, Plaintiff claims that he did not challenge the estate because he trusted Defendant and considered him to be "like a Rock of Gibralter" up until the point he discovered that Mother lived out the remainder of her life in

---

[8]  At the time of Father's death, Plaintiff was unfamiliar with the trust and probate procedures and claims that he "did not know that Defendant was required to submit a report on distribution of the trust and probate estates."  Pl.'s Nov. 16, 2006 Decl. ¶ 3.

Taiwan "as a poor lady in a meager apartment, using a torn bed sheet as a curtain." *Id.* ¶¶ 9, 10.  At that time, Plaintiff came to believe that Defendant was using the trust income for himself.  *Id.* ¶ 10.

**D.  Accounting of Father's Estate and this Action**

In May 2006, Plaintiff accumulated enough funds to hire an attorney in California, who mailed a certified letter to Defendant seeking an accounting of Father's Revocable Trust.  *Id.* ¶ 12.  Defendant did not reply or provide an accounting, and on July 11, 2006, Plaintiff filed a petition for an Accounting by Trustee for Father's Revocable Trust in probate court.  *Id.*; Def.'s Ex. EE.  On April 26, 2007, per order of the probate court, Defendant filed a Trust Accounting for Father's Trust.  Def.'s Ex. H.

On May 20, 2008, Plaintiff filed this diversity action alleging (1) intentional interference with his inheritance by reason of fraud, duress, or other tortious means, (2) intentional infliction of emotional distress, and (3) unjust enrichment, requesting the remedy of a constructive trust.

On August 5, 2008, Defendant filed a Motion for Summary Judgment based on the statute of limitations and laches.  On August 28, 2008, Plaintiff filed an Opposition.  On September 4, 2008, Defendant filed a Reply.  A hearing was held on September 15, 2008.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986) (stating that a party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV. <u>ANALYSIS</u>

### A.     Statute of Limitations

Defendant argues that Hawaii Revised Statutes ("HRS") § 657-7's two-year statute of limitations bars Plaintiff's tort claims, while HRS § 657-1's six-year statute of limitations bars Plaintiff's equitable claim. Def.'s Mot. in Supp. 11. Plaintiff asserts that the six-year statute of limitations contained in HRS § 657-1(3) covers his tort claims,[9] but nonetheless argues that the relevant statute of limitations is irrelevant because any applicable limitations periods are tolled

---

[9] Plaintiff does not state what statute of limitations governs his equitable claim.

10

pursuant to HRS § 657-20 and HRS § 560:1-106.  Pl.'s Opp'n 4-5, 20-21, 26.

Because the court finds that Plaintiff should have discovered any claims regarding his inheritance at least as of September 23, 1992, and because no tolling applies, Plaintiff's May 20, 2008 claims are time barred as a matter of law.[10]

### 1.      *The (Two or Six-year) Statute of Limitations Has Run*

Plaintiff argues that the statute of limitations did not begin to accrue until April 26, 2007 when Plaintiff discovered that the Family Stock was no longer in Father's Revocable Trust.  Pl.'s Opp'n 4-5, 26.  At oral argument, Plaintiff's counsel asserted that prior to April 26, 2007 nothing in the public probate records put Plaintiff on notice that he would not receive an inheritance -- specifically the stock in the Family Corporation -- from either Father's or Mother's Revocable Trust.  For the foregoing reasons, the court disagrees and finds that the statute of limitations on Plaintiff's claims accrued no later than September 23, 1992 when the Order Approving Mother's Estate was filed.

The discovery rule applies to all of Plaintiff's claims regardless of the applicable statue of limitations.  *See Ass'n of Apartment Owners of Newton*

---

[10]  Because Plaintiff's claims are barred under either a two or six-year statute of limitations, the court need not determine the proper statute of limitations for each of Plaintiff's claims.

*Meadows ex. Rel. its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 270-71, 167 P.3d 225, 277-78 (2007) (applying discovery rule under HRS § 657-7); *Office of Hawaiian Affairs v. State*, 110 Haw. 338, 362-64, 133 P.3d 767, 791-93 (2006) (applying discovery rule to Hawaii state law breach of trust claim); *Blair v. Ing*, 95 Haw. 247, 267, 21 P.3d 452, 472 (2001) (holding discovery rule applies to legal malpractice claims under HRS § 657-1(1)); *Pele Def. Fund v. Paty*, 73 Haw. 578, 597-98, 837 P.2d 1247, 1260 (1992) (applying discovery rule to federal breach of trust claim); *see also Brown v. Bishop Trust Co.*, 44 Haw. 385, 402, 355 P.2d 179, 187-88 (1960) (affirming summary judgment of equity claim where plaintiff would have discovered claim using reasonable diligence).  Under the discovery rule, "a . . . claim accrues when the plaintiff discovers, or through the use of reasonable diligence should have discovered[,]" the cause of action.  *See Venture 15, Inc.*, 115 Haw. at 270, 167 P.3d at 277; *Blair*, 95 Haw. at 267, 21 P.3d at 472 (stating accrual began when plaintiff knew or should have known of claim); *see also Brown*, 44 Haw. at 402, 355 P.2d at 187-88 (charging plaintiff with knowledge of facts he would have discovered with diligent inquiry).  The standard governing whether a plaintiff should have discovered the relevant facts underlying his claim is an objective test, but

> "[i]t is sufficiently flexible . . . to take into account the
> difference[s] between persons and their capacity to meet

12

> certain situations and the circumstances confronting them at the time in question." Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others."

*Venture 15, Inc.*, 115 Haw. at 271, 167 P.3d at 278 (*quoting Vidinha v. Miyaki*, 112 Haw. App. 336, 341, 145 P.3d 879, 884 (2006)). Reasonable diligence "means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Id.* at 270, 167 P.3d at 277 (citation, quotation signals, and brackets omitted).

Reviewing the relevant facts in the light most favorable to Plaintiff, the court finds that Plaintiff's claims accrued no later than September 23, 1992 when the Order Approving Mother's Estate was filed in probate court. Plaintiff had a strong expectation of inheriting assets from his parents. Pl.'s Aug. 21, 2008 Decl. ¶¶ 25, 35, 36. Nonetheless, Plaintiff received nothing from Father's Revocable Trust or Mother's estate.[11] Additionally, as early as September 1987,

---

[11] Plaintiff had received a copy of Father's Revocable Trust, which stated that any remaining assets in Father's Residuary Trust would be distributed on Mother's death. See Def.'s Ex. D, Art. II (3)(b)(3) ("The Residuary Trusts shall terminate when Settlor's spouse shall have

(continued...)

13

Plaintiff believed Defendant intended "to keep all the money in [Father's] trust for himself but at that time he was unable to pursue any legal action against [his] brother." Pl.'s Nov. 16, 2006 Decl. ¶¶ 4, 5. Certainly, these facts would have put a person of "common knowledge and experience" on notice that his rights to his expected inheritance may have been "invaded" requiring him to investigate to see what, if anything, Mother left him. *See Venture 15, Inc.*, 115 Haw. at 277, 167 P.3d at 270; *Brown*, 44 Haw. at 402, 355 P.2d at 187-88 (charging plaintiff with knowledge of his claim "where circumstances of which he was cognizant were such as to put a man of ordinary prudence on inquiry" (quotation signals omitted)). In fact, had Plaintiff exercised reasonable diligence or ordinary prudence and examined his Mother's publicly available probate records, he would have learned that Mother's Codicil[12] bequeathed the remainder of her estate solely to Defendant if Mother's Revocable Trust was not in effect at the time of her death. Further, the September 23, 1992 Order Approving Mother's Estate clearly states that Mother

> died testate, having duly executed the will dated August 7, 1987 and a codicil dated July 6, 1988 in the manner required by law; said will and codicil is valid in all respects and unrevoked. . . .
>
> That in and by Article THIRD (B) of said Last

---

[11](...continued)
died."); Pl.'s Nov. 16, 2006 Decl. ¶ 4.

[12]  Mother's Codicil was filed in probate court on October 17, 1991.  Wong Decl. ¶ 18.

> Will and Testament and codicil, if her Revocable Trust
> shall for any reason whatsoever not be in effect at the
> time of her death, decedent gave, devised and bequethed
> the rest, residue and remainder of her estate to DAVID
> C.A. LIN, as Trustee.
>
> That the Revocable Trust was not in effect as of
> the date of death of decedent and none of the assets
> mentioned in Articles THIRD, THIRD (A), and THIRD
> (C) were a part of said probate estate.
>
> That DAVID C.A. LIN, is named the trustee in
> said Last Will and Testament and codicil.
>
> That after partial payment of the funeral claim
> filed, there are no other known assets belonging to said
> estate.

Def.'s Ex. DD.  Because Plaintiff should have discovered any claims regarding his

inheritance by September 23, 1992, under the discovery rule, this action accrued

no later than that date.  *See Blair*, 95 Haw. at 267, 21 P.3d at 472.

Plaintiff's arguments that his claims did not accrue until 2006 fail.  At

oral argument, Plaintiff's counsel asserted that Plaintiff was not on notice of this

action because the Family Stock was not included in the probate of Mother's

estate -- so Plaintiff could reasonably believe the Family Stock was being held for

him in trust.  As set forth above, however, the Order Approving Mother's Estate

explicitly states that Mother's Revocable Trust was not in effect at the time of her

death.  *See* Def.'s Ex. DD.  Additionally, prior to Mother's death, Plaintiff

received a copy of Father's Revocable Trust that stated any remaining assets in his

Residuary Trust would be distributed on Mother's death.  *See* Def.'s Ex. D, Art. II

(3)(b)(3) ("The Residuary Trusts shall terminate when Settlor's spouse shall have died."); Pl.'s Nov. 16, 2006 Decl. ¶ 4.  Therefore, when the Order Approving Mother's Estate was filed on September 23, 1992, Defendant knew, or certainly should have known, that the Family Stock was not being held in trust for him.  To the extent Plaintiff contested the distribution of the Family Stock or believed Defendant acted improperly to keep that stock to himself, he was on notice of those claims at that time.[13]

Plaintiff also asserts that he was unsophisticated in these matters and therefore was not on notice of his claim.  But even a man unsophisticated in trust or probate matters would have been acutely aware that he did not receive an inheritance after his Mother died and as the years passed he continued to receive nothing.  Applying the objective, yet flexible, discovery rule to these facts, Plaintiff -- although perhaps unsophisticated -- was on notice of his potential claim

---

[13] Plaintiff's related argument that he could not have contested the distribution of Mother's estate because it did not contain stock in the Family Corporation misses the mark.  *See* Pl.'s Opp'n 10, 22-23.  Plaintiff argues that "[w]hen [his] mother died, there was no probate estate of the corporate stock, so whether he would have contested it or had knowledge of [Mother's probate] filings and notice is immaterial, as apparently the transfer of the corporate stock by the mother or Defendant was done before her death."  *Id.* at 10; *see also id.* at 22-23.  Plaintiff confuses the merit of challenging Mother's probate proceeding, which is not at issue here, with the time when he should have discovered the facts underlying the instant action.  The fact that Mother's probate did not contain the Family stock -- which Plaintiff argues shows that the stock was transferred during Mother's life -- is the reason Mother's probate puts him on notice of his claims in this action.  As explained above, if Plaintiff would have searched Mother's probate records, he would have learned that nothing was set aside for him in trust.

and bound to investigate the matter further. *See Brown*, 44 Haw. at 402, 355 P.2d at 187-88; *Venture 15, Inc.*, 115 Haw. at 270, 167 P.3d at 277 ("[A]n injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded . . . .")  Instead, Plaintiff sat on his rights until 2008 when he filed this action.

Plaintiff should have discovered the facts underlying all of his claims regarding his inheritance, or lack thereof, at least as of September 23, 1992. Because Plaintiff filed this action on May 20, 2008, over fifteen years after his cause of action accrued, his claims are barred as a matter of law under either a two or six-year statute of limitations.

### 2.     *Fraudulent Concealment Under HRS § 657-20 Does Not Apply*

In order to avoid the statute of limitations bar, Plaintiff argues that the fraudulent concealment provision contained in HRS § 657-20 governs his claims, and that the statute of limitations did not run under this provision until April 26, 2007 when he learned that the stock in the Family Corporation had been diverted from his inheritance.  Pl.'s Opp'n 4-5, 26.

In pertinent part, HRS § 657-20 states that where the defendant

fraudulently conceals the existence of the cause of action
. . . from the knowledge of the person entitled to bring

17

> the action, the action may be commenced at any time
> within six years after the person who is entitled to bring
> the same *discovers or should have discovered, the*
> *existence of the cause of action*    . . . , although the
> action would otherwise be barred by the period of
> limitation.

(emphasis added).  As used in § 657-20, fraudulent concealment means the

"employment of artifice, planned to prevent inquiry or escape investigation, and

[mislead] or hinder acquirement of information disclosing a right of action."  *See*

*Au v. Au*, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981) (quotation and citation

signals omitted); *see also Gast v. Kwak*, 396 F. Supp.2d 1150, 1157 (applying

HRS § 657-20); *Nakamoto v. Hartley*, 758 F. Supp. 1357, 1364-65 (D. Haw. 1991)

(citing *Au* and applying HRS § 657-20).  Accordingly, fraudulent concealment

requires that a plaintiff show that the defendant acted affirmatively and

fraudulently to conceal the cause of action from him.  *Id.  Au* states that

> [i]t is not necessary that a party should know the details
> of the evidence by which to establish his cause of action.
> It is enough that he knows that a cause of action exists in
> his favor, and when he has this knowledge, it is his own
> fault if he does not avail himself of those means which
> the law provides for prosecuting or preserving his claim.

*Au*, 63 Haw. at 216, 626 P.2d at 178 (citation and quotations signals omitted).

The court rejects Plaintiff's HRS § 657-20 claim -- Plaintiff utterly

failed to put forth any evidence that Defendant actively concealed his claim.  At

best, Plaintiff alleges that Defendant failed to give him any information.  *See* Pl's. Aug. 21, 2008 Decl. ¶ 21 ("I tried to ask my brother David what happened to the assets of both our parents but Defendant never explained anything to me about what happened to their estate."); *id.* ¶ 22 ("Defendant's attitude on the subject of what happened to our parent's estate was that he did not want to be bothered by me and my questions and it was none of my business."); *id.* ¶ 23 ("I also had an attorney in the San Francisco Bay area contact my brother about what happened to the family estate, and my brother David refused to respond to my California attorney's communications seeking information from Defendant about the estate assets.").  Defendant's refusal to provide Plaintiff with information regarding their parents' assets -- most of which was publicly available after their deaths -- hardly rises to the "employment of artifice, planned to prevent inquiry or escape investigation" required to extend the statute of limitations for fraudulent concealment under HRS § 657-20.  *See Au*, 63 Haw. at 215, 626 P.2d. at 178; *Nakamoto*, 758 F. Supp. at 1364-65; *see also Gast*, 396 F. Supp.2d at 1157 (finding fraudulent concealment did not apply for lack of "affirmative steps to conceal anything").  In short, HRS § 657-20 affords Plaintiff no relief.[14]

_____

[14]  Plaintiff also argues that several factual issues preclude summary judgment, including the dispute over the amount of shares Father had in the Family Corporation at his death, Pl.'s Opp'n to Def.'s SOF, at 2, Pl.'s Aug. 21, 2008 Decl. ¶ 10; whether the interest in the

(continued...)

**3.      *Fraud in Connection with a Probate Matter Under Hrs § 560:1-106 Has No Bearing on Plaintiff's Claims***

Plaintiff also argues that his cause of action is not time barred under

HRS § 560:1-106 for a person injured in fraud perpetuated in connection with a

probate proceeding.  Pl.'s Opp'n 20-21.  Section 560:1-106 of the Hawaii Uniform

Probate Code states:

> Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter . . . , any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person . . . benefitting from the fraud . . . .  Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of commission of the fraud.  *This section has no bearing on remedies relating to fraud practiced on a decedent during the decedent's lifetime which affects the succession of the decedent's estate.*

(emphasis added).  Plaintiff alleges that Defendant "took advantage of their aged

mother, such that she either transferred the corporate stock in [the Family

---

[14](...continued)
Condominium was owned by Father, the Family Corporation, or part of Father's Revocable Trust, Def.'s Exs. Q; R; S; Pl.'s Nov. 16, 2006 Decl. ¶¶ 14, 15; the validity of Mother's Will, Codicil, and First and Second Trust Amendments, Pl.'s Aug. 21, 2008 Decl. ¶¶ 4, 27; whether Defendant transferred the Family Stock to Mother, *id.* ¶¶ 5, 6, 18, 32; and what Mother did with the Family Stock.  *Id.* ¶¶ 15, 16, 17.  These facts are irrelevant to the timeliness issue, and therefore do not create a factual issue sufficient to preclude summary judgment.

Corporation] to Defendant, or she never actually owned the stock." Compl. ¶ 33; *see also* Pl.'s Opp'n 5; Pl.'s Aug. 21, 2008 Decl. ¶ 27. In stark contrast, Plaintiff does not allege that Defendant perpetrated a fraud on the probate proceeding after his Mother's death. *See* Pl.'s Aug. 21, 2008 Decl.; Pl.'s Nov. 16, 2006 Decl. Because Plaintiff alleges that any fraud was perpetuated upon his Mother while she was alive and HRS § 560:106 "has no bearing on remedies relating to fraud practiced on a decedent during the decedent's lifetime which affects the succession of the decedent's estate[,]" this section does not apply. Accordingly, Plaintiff's claims cannot be tolled under this section as a matter of law.

### B.  Equitable Tolling

While Plaintiff does not explicitly argue for equitable tolling of his claims, he asserts that additional reasons for his delay create a genuine issue of material fact precluding summary judgment. *See* Pl.'s Opp'n to Def.'s SOF, at 2. As explained below, Plaintiff's claims are not entitled to equitable tolling.

To equitably toll a statute of limitations, "a plaintiff must demonstrate (1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance stood in his way." *Office of Hawaiian Affairs*, 110 Haw. at 360, 113 P.3d at 789 (internal quotation signals omitted); *see also Narmore v. Kawafuchi*, 112 Haw. 69, 76, n.15, 143 P.3d 1271, 1278, n.15 (2006).

"Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it *impossible* to file a complaint within the statute of limitations." *Office of Hawaiian Affairs*, 110 Haw. at 360, 113 P.3d at 789 (emphasis added). Plaintiff has the burden of showing that he is entitled to equitable tolling of the statute of limitations. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Office of Hawaiian Affairs*, 110 Haw. at 360, 133 P.3d at 789.

Plaintiff explained that he delayed filing this action because he had insufficient funds to hire an attorney, Pl.'s Aug. 21, 2008 Decl. ¶ 30; Pl.'s Nov. 16, 2006 Decl. ¶¶ 6, 8; misunderstood the law, Pl.'s Nov. 16, 2006 Decl. ¶¶ 3, 6; believed that the stress of a lawsuit might be detrimental to his health, *id.* ¶¶ 6, 7; Pl.'s Aug. 21, 2008 Decl. ¶ 29; had a misplaced trust in Defendant, Pl.'s Nov. 16, 2006 Decl. ¶¶ 9, 10; Pl.'s Aug. 21, 2008 Decl. ¶ 29; and feared Defendant. Pl.'s Nov. 16, 2006 Decl. ¶ 7. Because Plaintiff has failed to explain why this list of excuses made it impossible for him to file a complaint within the statute of limitations, equitable tolling does not apply to Plaintiff's claims. *See Office of Hawaiian Affairs*, 110 Haw. at 360, 133 P.3d at 789.

Further, while Plaintiff may have experienced these set-backs during some portion of the fifteen years between when his claims accrued and filing suit,

he has failed to sufficiently explain how these circumstances persisted for the whole of those fifteen years.  For example, Plaintiff fails to identify if "the stress of litigation would have been detrimental to his health" until May 2008, *see* Pl.'s Nov. 16, 2006 Decl. ¶¶ 6, 7; to describe the pervasiveness and extent of his financial hardship; or to explain how his fear of Defendant (residing in Hawaii) kept him from filing suit while he resided in California.  Further, Plaintiff essentially admits that his trust in the "Rock of Gibraltar" Defendant eroded in September 1987 when Defendant sent him the Assignment: "Based upon these events [in September 1987], I believe it was David's intention to keep all the money in the trust for himself but at that time I was unable to pursue any legal action against my brother."  *See* Pl.'s Nov. 16, 2006 Decl. ¶¶ 4, 5.  And finally, as noted above, Plaintiff failed to diligently pursue his claims.

Because Plaintiff has failed to meet his burden to explain how, despite his diligence, extraordinary circumstances justify such a prolonged delay, the court finds no reason to equitably toll the statute of limitations.[15]

**C.     Federal Rule of Civil Procedure 56(f)**

Plaintiff argues that summary judgment should be denied to allow

---

[15]  Given the court's ruling on the statute of limitations, the court need not address Defendant's argument that laches likewise bars these claims.

discovery pursuant to Federal Rule of Civil Procedure 56(f).  Pl.'s Opp'n 29-30.

The court rejects Plaintiff's request because Plaintiff fails to identify how further

discovery could identify any facts that would raise a genuine issue regarding the

statute of limitations or equitable tolling.

> Pursuant to Rule 56(f):
>
> If a party opposing the motions shows by affidavit that,
> for specified reasons, it cannot present facts essential to
> justify its opposition, the court may:
> > (1) deny the motion;
> > (2) order a continuance to enable affidavit to be
> > obtained, depositions to be taken, or other
> > discovery to be undertaken; or
> > (3) issue any other just order.

"A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit

the specific facts that further discovery would reveal, and explain why those facts

would preclude summary judgment."  *Tatum v. City & County of S.F.*, 441 F.3d

1090, 1100 (9th Cir. 2006).  "Failure to comply with the requirements of Rule

56(f) is a proper ground for denying discovery and proceeding to summary

judgment."  *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th

Cir. 1986).

Plaintiff's Opposition and supporting affidavit do not meet the

requirements of Rule 56(f).  Specifically, Plaintiff has failed to identify "specific

facts that further discovery would reveal, and explain why those facts would

preclude summary judgment" on statute of limitations grounds. *See Tatum*, 441 F.3d at 1100. In the supporting affidavit, Plaintiff's attorney states that Plaintiff has already requested discovery of Defendant's finances and the Family Corporation's corporate documents, Geshell Decl. ¶¶ 3, 4, and "the motion should be denied or at least continued to enable Plaintiff to undertake the discovery plan . . . to specifically develop further facts on the issue of whether the appropriate statute of limitations has run . . . ." Geshell Decl. ¶ 5. Nothing in the summary of the outstanding discovery request or generalized discovery plan identifies what discovery Plaintiff would conduct that would uncover a material fact *on the timeliness issue.* Furthermore, considering that Plaintiff had access to the facts underlying his claim as early as September 1992, the court cannot envision a fact that Plaintiff could "discover" now that would create a genuine issue as to the timeliness of Plaintiff's claims. Because Plaintiff fails to comply with the requirements of Rule 56(f), denial of discovery is proper. *See Brae Transp., Inc.*, 790 F.2d at 1443.

Accordingly, the court GRANTS Defendant's Motion for Summary Judgment on all claims.

///

///

## V. __CONCLUSION__

Based on the foregoing, the court GRANTS Defendant's Motion for

Summary Judgment on all claims.  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 24, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lin v. Lin et. al*, Civ. No. 08-00229 JMS/BMK, Order Granting Defendant's Motion for Summary Judgment